We'll proceed to the next case, number 17-13811, Washington v. Rivera. Mr. Strickland is here for the appellant, Mr. Spears for the appellee. Once you've changed places, Mr. Strickland, at your leisure. Mr. Strickland May it please the court, I'm Rick Strickland. I represent Shannon Rivera, who was a probation officer in the state court of Bryan County. I know the court is familiar with the briefs and the facts. There are about three very critical facts I would like to just focus upon with regard to the issues in this case, and there are various immunity issues. Specifically, Judge Jack Kearney, who was the judge of state court, ordered that Mr. Akeem Washington's projected status of being on probation would be suspended upon his payment of the fine, explaining that Washington's fine of $895 was to be paid by October 25, 2011, at 5 p.m., and in the event the fine was paid, he would be released from probation. And that is from paragraph 25 of the plaintiff's complaint. We're here on a motion for judgment on the pleadings. This case originated in the Superior Court of Bullock County. It went to the Georgia Supreme Court at one point. After that, the plaintiff amended the complaint to add a 1983 claim. We removed it to the Southern District of Georgia, filed a motion for judgment on the pleadings, and Judge Hall entered an order denying that motion. The second fact is that the clerk of court, and this is attached to the third amended complaint, which is the operative pleading in this case, entered a note on the docket that day that says, quote, must pay by 1025 at 5 p.m. or he stays on PROB period. If he pays, then call Shannon, who was my client, Ms. Rivera, the probation officer, so she can release his PROB. That is also, that is the attachment to the plaintiff's third amended complaint, which is the clerk's docket note. Can I ask you the two facts that I think are most interesting to me, and you can tell me if this was going to be fact number three, but I'm interested in precisely what Rivera heard Washington tell the judge and what she heard him being told by this other person, Curl. Did she hear him say to the judge, I'm going to pay it right now? And did she hear Curl say, it's fine if you leave the courthouse right now to go to the ATM and come back and pay it? There is nothing in the record that establishes whether she heard that or not. There are allegations that she was in the courtroom while that was said. So in the complaint, what does the complaint say about that? Just remind me. The complaint says that the judge told him that he could pay it, and there's an allegation that he said that he was, he asked if he could go to the ATM and get it that day, and the judge said that was okay. And Rivera, what does the complaint say about Rivera? Was Rivera there, was in earshot? She was present. Okay. It's not, it's not a model of clarity exactly where, and I'll say, because I think Brian and Mowoodley did a good job of trying to plead this around such a motion, and particularly with regard to there's a defense not raised, which is official immunity under state law, which they were able to plead around that. But based upon the facts that I mentioned, certainly the qualified immunity analysis, and I know we led in our brief with the quasi-judicial immunity defense. That is, quite frankly, the court may be not writing with a clean slate, but a slate that's not very, there's not very much chalk on it. There are other circuit courts that say that state law probation officers in providing information for an arrest warrant are not entitled to quasi-judicial immunity. There, there is an opinion I rely on pretty, pretty heavily is Judge Hall's opinion in the Dorman case from the Northern District when she was on the bench there that dealt with a federal probation officer, but an arrest warrant for a violator. And we asked the court to extrapolate that to a state probation officer. Briefly on the quasi-judicial immunity argument, the function that is looked at, it has to be something that's intimately associated with the judicial phase of criminal process. And I want to point out something that I realized may not be as clear in the brief, but the law is the law. And the statutory scheme governing the state court of Bryan County is different today than it was in the 2010 version. In the 2010 version, it was incumbent upon and it was set up so that the state court judge was authorized to set up a probation department using county resources if the county agreed. The legislature, the General Assembly changed that in the 2015 version and flipped it so that today it is the county governing authority that can do that with the consent of the state court judge. And I believe that that's a critical difference because it shows that with regard to the state court of Bryan County, this probation department was set up by Judge Jack Carney. Yes, the county has to agree to it, but if he doesn't authorize it, it doesn't happen. Has it always been the case under Georgia law different from the federal provisions at issue in Judge Hull's opinion that, and I'm not sure this is dispositive, but perhaps irrelevant, that the POs in Georgia are defined as peace officers as opposed to, I think, in the federal system, they are actually organized under the judicial branch? I don't think that makes a difference. It is different. It is different. And I think that shows that she is in maybe a dual capacity. There are a couple of cases that talk about the dual capacity and they may serve more than one function. And what the other circuits seem to have said is that dual capacity, where the PO is doing a PSR or something, that's really judicial and we're going to give the immunity for that, where they're basically acting as a police officer swearing out a warrant, no, qualified immunity. That is correct. That is correct. And I'll get to qualified immunity in just a second. But with regard to that, particularly in Georgia, because of the way the statutory scheme was in Article 6, Paragraph 1, Section 1, 1, 2, and 7, it's clear that the General Assembly sets up the courts in the state of Georgia. And it's clear that state court judge, Judge Carney, is acting on behalf of the state. And because he is authorized to set up the probation department, I believe that is a distinction that does make a difference here because Shannon Rivera has no reason whatsoever to be looking at Mr. Washington's status on probation, but for her obligations to report to Judge Carney, who authorized the probation department to be set up the way it was. It's not that way anymore. In 2015, that changed. That statute has changed a bunch over the years since 2002. But most recently, there has been a change, whereas when this happened, Judge Carney authorized the existence of this court. Go ahead, please. So under your argument, under the 2010 version, any action that a probation officer took would be entitled to judicial immunity? Not if it was a purely administrative function, which would be somewhat similar to what the other circuits have held. So you're not drawing the distinction between the pre-sentencing reports, which would be for the benefit of the court, and then law enforcement actions like seeking an arrest warrant. You're not drawing that distinction. I'm not. It's clear, I think, that pre-sentence investigation reports have been pretty much universally held to be protected by quasi-judicial immunity. What I think is different here is because Judge Carney himself was responsible for authorizing and essentially establishing the probation department in state court. I don't see how that helps you a whole lot. That almost goes to the argument that anything the probation officers do would have judicial immunity, and we know that we don't look at it that way. We look at it function by function, and it's hard for me to get around the Malley case in the Supreme Court. I don't see any difference between a law enforcement officer initiating a warrant and a probation officer initiating a warrant, same function. Your Honor, I'll acknowledge that the quasi-judicial immunity is not the stronger of the argument, so I'm going to, if you don't mind, I'm going to flip it to the qualified immunity argument and why Kingsland. I agree with you that qualified immunity is a whole lot stronger. The Kingsland case doesn't control here because I think Kingsland, at least at the district court level, I've had a number of back and twos with judges, both magistrate judges and district court judges, about the breadth of Kingsland, and I think it's, I think it's a little bit overgeneralized and not being held to its facts, and the reason this case is different than Kingsland is that this is not a case where there's a falsification and knowing lack of probable cause. The critical fact goes back to one of the three I mentioned earlier, is what is in the clerk's notes that was told in open court and that Shannon Rivera was there to hear, that is alleged that she was never told that he had come in and paid, and they allege that clearly, and so this would be more along, as was analyzed in Kingsland, in the Post case, more of a good faith mistake. She had information that would have allowed her to believe there was probable cause to seek an arrest warrant. Could she have done more? That's always debatable, but if that is the standard, then Kingsland is going to swallow the qualified immunity rule. I'll reserve the rest of my time. Okay, thank you. Thank you, Your Honors. My name is George Brian Spears. I'm here with my co-counsel, Maoli Davis, and with my client, Mr. Hakeem Washington. I'll try to briefly touch on the quasi-judicial immunity and point out, among other things, that in addition to the Maoli case, I believe that the function analysis that Your Honor has just referred to also stems clearly from the Kalina v. Fletcher case, which came out of the Ninth Circuit and then was decided by the Supreme Court, and once again, and reliance upon Maoli, focused on a particular function that a prosecutor in that case had done, which was, under oath, to swear to the facts to obtain an arrest warrant. If you look at Kalina, you'll see that the Supreme Court differentiates between how it would treat other actions of a prosecutor and accord absolute immunity to that, but they focused in on the third of the three actions that were challenged in that case, the third being swearing to an arrest warrant, and for that, the Court said, that's a function that a law enforcement officer does, such as in Maoli, and that's not a function for which a governmental official will be given absolute immunity. So is your response to your adversary's citation of Judge Hull's opinion in Dorman that she was just wrong? The good news for you is that she's not here today, but that Judge Hull was just wrong in that district court opinion. I think that she was, but let me also point out that there are, there's a distinction, of course, when you're dealing with federal probation officers, which I think really did kind of change the equation if I had to look back at how that case turned out, because in Dorman, it was a federal probation officer whose action was being scrutinized, and in that situation, the law itself that sets up the probation officers, at least at that time, for purposes of carrying out their functions, places them squarely under the supervision of the courts, not under the supervision of any other entity, not under law enforcement supervision provision. So I believe that for purposes, when we look at, when we accept the court's direction, that we look first at the function that's being performed to determine whether or not absolute or qualified immunity will be the immunity on which a I believe that the combination of Malley and Fletcher makes clear that when a governmental official swears to the facts upon which they are seeking an arrest warrant, that that's a law enforcement function, and that is not a function for which they enjoy absolute immunity. I would, if I may also point out that the functional analysis is exactly the analysis that the court used again, the Supreme Court used again, in the case Antwon versus Byers and Anderson, the cipher which I provided to the court yesterday by way of filing, which was a rejection there of a court reporter's claim to absolute immunity. A court reporter surely works closely with the court. A court reporter surely has information on which the who had failed to prepare a transcript and a criminal defendant alleged that the two years or so length of time that the transcript had not been prepared had deprived them of due process. In evaluating that case, the Supreme Court rejected the proposition that proximity or closeness to the court, which I think is really all that Rivera is able to rely on, somehow means that the action that one takes simply means that you get absolute immunity. So how about qualified immunity? I think we've telegraphed in our questions that we think that's actually the stronger argument for your opponent. So tell us about qualified immunity. What is it that clearly establishes the law in your favor here? Well, if I may, Your Honor, I'd like to touch on what I think is a critical part of understanding their argument and what I think actually takes the rug out from their argument. The sole paragraph in the complaint on which they relied to claim that she knew that the clerk was to contact her in the event that Washington paid the fine does not say that Rivera heard it, does not say that Rivera was aware of that notation. The notation that you see, and let me see, here's what it reads in paragraph 27. It simply reads that after the judge made his announcement that my client could go get the money and come back and pay it, the clerk made a notation on the written calendar clerk. That's the source for this allegation. And that notation by the clerk, and I dare say that's a notation to herself and to her assistant, read, quote, that if Washington paid the fine, the clerk's office was to call Shannon. There is no allegation in the complaint that Rivera ever saw the clerk's notation or ever heard the statement to the effect that the clerk would call her. Instead, and again, this is a judgment on the pleadings, so I'm now going to refer to what in her answer Rivera denies knowing anything about Washington getting additional time to pay. In response to paragraph 24, Rivera denied that she heard Washington tell the judge that he was going to get the money. And in paragraph 25, her response to paragraph 25 was to deny that she heard the judge tell Washington that if he paid the fine by late October, he would not be on wrote a note to herself and her staff to call Shannon if Washington paid the fine. And nowhere does the complaint allege that Rivera heard anyone say that she would receive a call from the clerk's office in the event that Washington paid. Is that is that though necessary for her side of the case? I mean, don't you to overcome qualified immunity sort of need a smoking gun that in fact she knew something bad, not that she didn't know something good, right? I'm sorry. Does that make sense? Yes, sir. First of all, she knew the complaint alleges she's in the courtroom the whole time when the important statements are made by the court and the request for additional time to pay is made by my client. She hears all that and that is specifically alleged in the complaint. If I may, what the complaint alleges by way of example is that even though she knew that Washington was being well, I'll start with this premise. The complaint alleges that when when she heard that Washington was going to have additional time to pay, it meant one thing about the payment of the fine. It meant that the fine was going to be paid to the clerk's office. The complaint also alleges that under those circumstances when persons have been given additional time to pay, she herself had contacted the clerk's office to find out whether or not a payment had been made. Rivera swore that Washington failed to pay his fine despite hearing the judge give him additional time and despite knowing that that meant he was going to pay the clerk and not Rivera. He swore that Washington failed to pay the fine without contacting Washington, that's paragraph 54, without contacting the clerk of court, that's paragraph 66 and 94, without asking her own assistant, Tina Ellis, and the specific allegation in the complaint at paragraph 65 is she took no step to determine whether Washington had paid the fine. This is a case as presented on a judgment for the judgment on the pleadings motion where the facts alleged by by the plaintiff when they are facts rather than some conclusion of law are matters for which the plaintiff is entitled to have the court view them in the light most favorable to the plaintiff. The court cannot infer or intuit in favor of Washington that she heard something written down on a piece of paper that she never saw and particularly under circumstances where she says she knew nothing about this this whole business altogether. That's exactly what's in her answer. Let me see if I understand what you're saying. I think you're saying that she was in the court and she heard everything Washington said but she did not hear or gather that the clerk's office was supposed to call her. Is that what you're saying? What I'm saying is that the complaint never alleges that she heard that she would receive a call from the clerk's office. Okay, let me ask you this question. If, contrary to that assumption, if we read the complaint that the reasonable inferences from the complaint are that she not only heard everything you want her to hear but she also heard that the clerk's office was going to call her if and when Washington did pay. Assume that just for purposes of this question, does she not get qualified immunity under those facts? No, sir. Seems to me, let me ask you why this is not wrong. Seems to me that then simply is this situation. Frankly, pretty close call on the constitutional issue whether that would be it has to be clearly established so that you have to have either a case materially similar on point or it has to be a matter of obvious clarity that when she understood that if Washington was actually paid, she was going to receive a call from the clerk's office. She did not receive that call. So her deficit, her deficiency is that she failed to double check with the clerk's office before she filed. That seems to me not to be a matter of obvious clarity that every officer would know violates the Constitution. Where am I wrong? Well, Your Honor, I think you are correct in saying that there is not a case on all fours. There isn't a case that holds that a probation officer, even though they think a probationer is to pay somewhere else, if they don't hear otherwise, then they can swear out an arrest warrant claiming that there's probable cause. I agree with that. But by the same token, the upshot of the allegations of the complaint simply stated are that she did no investigation, none whatsoever, despite knowing . . . That doesn't seem to me to help you much because if it is true that she heard everything that went on and knew that if Washington paid, the clerk's office was going to call her, I don't see where she needed any other investigation. I mean, she knew she didn't get a call. She knew the time for the appointment had passed and therefore she swore out the warrant. I understand the hypothetical, Your Honor, but aside from insisting that that's not a hypothetical, that it's before the court by the allegations of the complaint . . . I see, and I'll reread the complaint very carefully to make sure that there is a reasonable inference that Rivera did not hear and did not know that the clerk's office clerk was supposed to call her if Washington did not pay. I understand your point. Thank you, Your Honor. And just, if I may, to follow up so we can get to the second half of Judge Anderson's question, you say there's not a case on all fours. I think you're right about that. But you've cited two cases. How is it that either of those two cases clearly establishes the principle that you need to win here? They both seem fairly distinguishable to me. Kingsland is an outrageous case. It is, Your Honor. Fabrication of evidence and, you know, sort of just falsification. The other case, Tillman, is also pretty outrageous in the sense that, as I understand it, the police officer just arrested this woman to identify her. Well, that was stated. There was, of course, the correlation between the person who is being sought by the warrant and the name of the two individuals. The person who was arrested had a name that either was identical or close. And that's the basis on which the sheriff then arrested the older woman, the woman who was 40 years old, and had her brought in. But didn't we say in our opinion that the arrest was solely for the purposes of identification? That's a pretty outrageous police practice. That is, Your Honor. And, of course, the law has clearly established that a sheriff cannot do that. By the same token, what took place then in the Tillman case was an officer having some hunch, some information that would give rise to a possible suspicion that the warrant should be executed against that 40-year-old failed to make any investigation into whether or not the age was the same as the younger person. If I may, Your Honor, I'll point to two cases that I think are also in this area of making the law clearly established. The first that I'll cite is Rankin v. Evans, which is in my brief, which cites the Tillman to affirm that an arresting officer is required to conduct a reasonable investigation to establish probable cause. I will point out that in Rankin, the officer, the court declared that the officer failed to conduct a reasonable investigation before charging Howard, the plaintiff, with assault, noting that there were readily available corroborative witnesses who the officer failed to contact. If it's the case, even if it's the case that Rivera heard something to the effect, heard something to the effect that she was going to receive a call, that information alone does not give her probable cause to have my client arrested. And that information alone then does what? It has her understand that in order to know whether or not my client had paid the fine, she has to find out whether or not the clerk actually received the money. She can't both say, oh, I thought I was supposed to get a call and have the implication be that the clerk either received the money or didn't, and that's the important fact that she has to know before she seeks out an arrest warrant or she didn't have this information at all. And I dare say if the complaint does not allege that she heard that notation that the clerk put on the page, then she has no available qualified immunity defense at all. Thank you, Your Honor. Thank you so much. Five minutes. Thank you, Your Honor. I'm a little bit, I guess, surprised that the, at Brian casting this as she was able to hear part of what went on in the courtroom, but not hear what the judge said that the clerk was taking down. Because heretofore, the plaintiff has basically made the argument that my client had no way of knowing whether the silence from the clerk's office was because Washington had failed to pay or because the clerk had failed to notify her, which is how the case has kind of been argued up until this point. That seems to be a shifting of gears. But I agree that with what Judge Anderson latched on to is that I don't, at least in my view, you can't, you can't have the inference that only, she only heard the good and not the bad or vice versa. And so, I believe that that is still going to bring this under the Kingsland case or take it out from under. Because as you mentioned, Kingsland is an egregious case. They only cite Kingsland and Tilly. And Kingsland's one I'm more concerned with because it is so egregious and has been applied to deny qualified immunity in a number of instances outside of its facts, at least at the district court level. And this is nowhere near that. And so, I acknowledge that the better argument is qualified immunity. There was so little there with regard to quasi-judicial immunity. It is something that's certainly an area that, you know, needs some guidance from this court on. I understand that guidance might not be helpful to my client in this particular case, but thank goodness there's also qualified immunity. So, if there are other questions about either the application of Kingsland or qualified immunity, I'll be glad to take those. If not, I'll briefly touch on the state law arguments. The one thing that the court may note is we haven't yet, we didn't raise the argument of official immunity. There are only individual capacity claims in this case. There is another defendant, Tina Ellis, who was the assistant to my client, Shannon Rivera, is still in the case. And there's specific allegations in the complaint that she failed to provide information to my client. And if my client had not heard these other things, it really wasn't germane to the issues in the complaint. So, I don't know why it would be in there. But the official immunity argument has not been raised, but raised. We rely upon kind of bootstrapping, I guess, because there's not a lot in Georgia either about the quasi-judicial immunity that based on Halsey versus Hine and Smith versus Hancock, which neither are probation officer cases, but that we would get quasi-judicial immunity. But the more interesting argument for this point is that under the Georgia TORC Claims Act and the definitions or the specific language. And, you know, from a standpoint of statutory construction, generally words are held to mean what they say. And to be entitled to immunity under the Georgia TORC Claims Act, a person need be acting, quote, on behalf or in service of the state. I do go back to the point about the change in the statutory construction to support this argument under the TORC Claims Act, because I understand the facial uneasiness of a probation officer in a county location being under the TORC Claims Act. But the persons who are entitled to the protection of the TORC Claims Act are someone acting on behalf or in service of the state. We believe as a result of the way the State Court of Bryan County Probation Department was set up by Judge Carney, by statute, that means that Shannon Rivera was acting on behalf or in service of the state, and that the state government entity on whose behalf she was working or acting, which the... Is that statutory provision you keep talking about 42-8-101-a-2-n-p-n? Well, at the time it was 42-8-100. All of it was contained within section 100 at the time. That the new version, that is the new version. And that applies to our case 101-a-2? No, sir. The 42-8-100, which was, it contained, there is actually, if you go to, if you go to 100, there is a derivation chart showing how all of the changes came about. Almost the entire statutory structure in 2010 was under 42-8-100. All of those... And the instant office was established under the old law, is that what you're saying? It was established in 2007. Okay. So your position is that the old law is what governs the structure here. Is that correct? That is correct. And why is that better for you than what the new law is? Because the new law flips around the authorization for establishing county probation officers. It now authorizes counties to do it with the cooperation of the state court judge. Whereas in 2010, that statutory scheme, or it was actually in place back in 2005, it allowed the state court judge to establish the county probation system. So really the difference is who initiates it? That is correct. And why should that matter? Because it shows where the authority for that entity flow, from which it flows. It doesn't flow from the county. The allegations here are very clear, that the county hired, fired, supervised, all the indicia of employment is with the county. Those are clear allegations of the complaint that you don't deny. That is correct. And as I've told folks many times, anytime I get a choice between getting the facts and the law, I'll take the law. And the law as applied, regardless of what those allegations are, she in that position is serving to master, so to speak, within that probation department. She's also a peace officer as alleged, but with regard to those probation duties, she is carrying those out as a matter of law. If my presiding judge will let me, I have one more question. Yes, sir. It seems to me that this section on which you rely, which I'm reading, it's from 50-21-22-7, and you rely on the language state officer means and persons acting on behalf or in service of the state in any official capacity. But then that's limited in a later phrase in that very same provision, but the term does not include an independent contractor doing business with the state. Seems to me that specific provision, an independent contractor being excluded, would prevail over the general, which is persons acting on behalf of the state, even though an independent contractor might well be acting on behalf of the state. And the same thing would flow from 50-21-22-5, where it explicitly and specifically says that counties are not included. So how do you respond to that? Because the state government entity, which is the second part of that, is the state court of Bryan County. It's not the county. It's the state court of Bryan County. The contention is that that is the state entity in this circumstance. How do you parlay that into the county employee? In the capacity in which she has been sued, she is acting on behalf of Judge Carney. That goes back again to the change to the statutory scheme about probation in Georgia. But to go back to the constitutional provision, it's the General Assembly that sets up the court system. And the state court of Bryan County, our contention is, is a state government entity and that she is serving on behalf or in service of that state government entity. And there's no case one way or the other on this? There is no case. This is purely statutory. All right. Very well. Thank you so much. Thank you. Thank you.